**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MICHAEL RHYMES,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br><br>NEVADA DEPARTMENT OF CORRECTIONS, *et al.*,<br><br>　　　　　　Defendants. | 3:15-cv-00592-RCJ-CBC<br><br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |

This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

This case involves a civil rights action filed by Plaintiff Michael Rhymes ("Rhymes") against Defendants Cynthia Sablica ("Sablica") and Dwight Neven ("Neven") (collectively referred to as "Defendants"). Currently pending before the Court is a motion for summary judgment filed by Defendants. (ECF No. 67.) Rhymes opposed the motion, (ECF No. 80), and Defendants replied. (ECF No. 81). Having thoroughly reviewed the record and papers, the Court hereby recommends that Defendants' motion for summary judgment be granted in part and denied in part.

**I.　Background and Procedural History**

　A. Procedural History

Rhymes is an inmate in the custody of the Nevada Department of Corrections ("NDOC"), and is currently housed at Northern Nevada Correctional Center ("NNCC") in Carson City, Nevada. (ECF No. 26.) However, the events giving rise to this case took place at High Desert State Prison ("HDSP") in 2014. (*Id.*) On April 25, 2017, Rhymes submitted his second amended complaint ("SAC") pursuant to 42 U.S.C. §1983. (ECF No. 26.) In the complaint, Rhymes asserted two claims for relief against Defendants

Sablica, Neven, Cox, and Aranas. (*Id.* at 2-9.) Rhymes sought injunctive, declaratory and monetary relief. (*Id.* at 12.)

Pursuant to 28 U.S.C. § 1915A(a), the Court screened Rhymes's SAC and concluded an Eighth Amendment deliberate indifference claim against Sablica and Neven made in Count I of the SAC could proceed. (ECF No. 26.)

### B. Factual Background

In the SAC, Rhymes alleges Defendants Sablica and Neven violated his Eighth Amendment right to be free from cruel and unusual punishment by acting with deliberate indifference to his medical needs. (ECF No. 26 at 4-7.) Specifically, in mid-March 2014 Rhymes asserts he stopped receiving his prescriptions for Hydroclorothiazide for his high blood pressure and Glipizide for his diabetes. (*Id.* at 4.) He submitted medical kites requesting he be provided with the medications and he began "making oral request to [Sablica], the nurse who was appointed to deliver medication to [Rhymes'] housing unit." (*Id.*) Rhymes claims Sablica refused to deliver Rhymes' medications or inquire with her superior medical officers as to why Rhymes was not receiving his medications. (*Id.* at 5.) After exhausting the grievance process, Rhymes alleges that he received his medications on June 28, 2014, but was once again deprived of his medications from mid-August, 2014 until mid-September, 2014. (*Id.*)

Rhymes alleges that as a result of being deprived of these medications "he suffered from, and continues to suffer from, advanced neuropathy, intense pain and swelling in his feet, legs, and hands, permanent substantial vision loss, and painful ruptured capillaries in his limbs." (*Id.*) Furthermore, he alleges that Neven failed to enforce all regulations of the NDOC pertaining to medical care resulting in a failure to discharge his duties under NRS § 209.161. (*Id.* at 6.) Finally, Rhymes alleges that Defendants acted with deliberate indifference to Rhymes' serious medical needs by delaying and denying his access to his medications. (*Id.* at 7.)

///

///

  C. Defendants' Motion for Summary Judgment

On July 12, 2018, Defendants filed a motion for summary judgment. (ECF No. 67.) In the motion, Defendants argue: (1) Rhymes was not denied medications for high blood pressure and diabetes to his physical detriment; (2) Sablica did not personally participate in the alleged deprivation of Rhymes' medications; (3) Neven was not personally involved in any medical care; (4) Defendants cannot be held liable, in their official capacities, for monetary damages; and, (5) Defendants are entitled to qualified immunity. (ECF No. 67 at 1-11.)

In response, Rhymes filed an opposition arguing that summary judgment is inappropriate because: (1) Sablica was in a position to assist and did not do so despite Rhymes discussing the medication issue with Sablica multiple times when she delivered medication to Rhymes' housing unit; (2) Neven has the authority to assist Rhymes under the Care of Offenders clause set out in Nevada Revised Statute ("NRS") § 209.161, and he was aware of the issue with Rhyme's medications because Rhymes spoke with Neven about it during a visit to the housing unit; (3) the issue of official capacity is either moot, or Defendants' position regarding monetary damages is incorrect because Rhymes initially sought injunctive relief; and, (4) Defendants are not entitled to qualified immunity because they directly participated in the denial of medication and were on notice of the alleged constitutional violation. (ECF No. 80 at 1-10.)

In reply, Defendants argue that: (1) Rhymes has failed to demonstrate deliberate indifference to a serious medical condition since Defendants did not personally participate in the deprivation and were not aware of the issue; and, (2) Defendants are entitled to qualified immunity because neither personally participated in the ordering or delivering of Rhymes' medications and no law put them on notice of the alleged constitutional violation. (ECF No. 81 at 1-4.)

**II. LEGAL STANDARD**

Summary judgment allows the court to avoid unnecessary trials. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court properly

grants summary judgment when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Id.* Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). At this stage, the court's role is to verify that reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

Summary judgment proceeds in burden-shifting steps. A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for

trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. Although the nonmoving party need not produce authenticated evidence, Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported and meritorious summary judgment motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge and set forth facts that would be admissible into evidence and the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

**III.   DISCUSSION**

    A.   <u>Eighth Amendment Deliberate Indifference</u>

The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency" by prohibiting imposition of cruel and unusual punishment by state actors. *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). The Constitution's stricture on the "unnecessary and wanton infliction of pain" encompasses deliberate indifference by state officials to the medical needs of prisoners. *Id.* at 104. It is well-settled law that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id.* at 105.

In the Ninth Circuit, deliberate indifference claims are analyzed under a two-part test. "In order to prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must show . . . an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Colwell*, 763 F.3d at 1066 (quoting *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012)) (internal citations and quotation marks omitted). The objective component examines whether the plaintiff has a "serious medical need," such that the state's failure to provide treatment could result in further injury or cause unnecessary and wanton infliction of pain. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Serious medical needs are those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities' or the existence of chronic and substantial pain." *Colwell*, 763 F.3d at 1066 (citation and internal punctuation omitted).

Delay of, or interference with, medical treatment can also amount to deliberate indifference. *Jett vs. Penner*, 439 F.3d 1091,1096 (9th Cir. 2006); *Clement vs. Gomez*, 298 F.3d 898, 905 (9th Cir. 2002); *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). Where the prisoner is alleging that delay of medical treatment evinces deliberate indifference, however, the prisoner must show that the delay led to further injury. *Hallett vs. Morgan*, 296 F.3d 732, 745–46 (9th Cir. 2002); *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam)

The subjective element considers the defendant's state of mind and whether the plaintiff was harmed. Only where a prison "official 'knows of and disregards an excessive risk to inmate health and safety'" is the subjective element of the test satisfied. *Id.* (quoting *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004)). The conduct must consist of "more than ordinary lack of due care." *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). Not only must the defendant prison official have actual knowledge from which he or she can infer that a substantial risk of harm exists, but he or she must also draw that inference." *Id.* at 837.

1  The standard lies "somewhere between the poles of negligence at one end and
2  purpose or knowledge at the other[,]" *id.* at 836, and does not include "accidental or
3  unintentional failures to provide adequate medical care . . . ," *Estelle*, 429 U.S. at 105.
4  Finally, the plaintiff must prove that he was harmed by the indifferent actions, though
5  the harm need not be substantial.  *Jett*, 439 F.3d at 1096.

6  In addition, the plaintiff must show that each defendant "'through the official's
7  own individual actions[] has violated the Constitution'" for deliberate indifference liability
8  to arise.  *Starr v. Baca*, 652 F.3d 1202, 1206 (9th Cir. 2011) (quoting *Ashcroft v. Iqbal*,
9  556 U.S. 662, 676, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).  Prison supervisors are
10 not vicariously liable for the deliberate indifference of subordinates under § 1983.  *Id.*
11 Yet a supervisor's own actions or inactions in training, supervising, or controlling
12 subordinates may be independently culpable conduct from which liability can arise.  *Id.*
13 at 1205-07.  Accordingly, that a subordinate made an unintentional error does not
14 preclude a supervisor's liability for the harm.  The supervisor may be liable when his
15 actions or inactions proximately cause the injury suffered by the plaintiff—that is, his
16 acts or omissions set into motion the acts of subordinates, or he fails to terminate a
17 subordinate's acts about which the supervisor knew or reasonably should have known.
18 *Id.* at 1207-08 (citations omitted).

19 It is uncontested that Rhymes has a serious medical need stemming from his
20 diagnosis of hypertension and diabetes, thus the Court will proceed to the deliberate
21 indifference prong.

22    B.    <u>Analysis</u>

23        1.    <u>Knowing Disregard of an Excessive Risk to Rhymes' Health</u>

24 In this case, Rhymes alleges there was a delay in his receipt of some of his
25 prescribed medications.  (ECF No. 80 at Ex. 2, pp. 2-3.)  He alleges that he did not
26 receive his prescriptions for hydroclorothiazide and glipizide, rather he received a
27 "double order" of lisinopril and metformin.  (*Id.*)  Defendants acknowledge that Rhymes
28 did not receive those two medications on April 29, 2014, however, Defendants asserts

that these two medications were re-ordered and Rhymes received them on May 29, 2014. (ECF No. 67 at 6.) Defendants also include prescription information for January 2014 to March 2014, but Rhymes states that this timeframe is not contested. (ECF Nos. 67 at 6-7; 80 at Ex. 2, pp. 2-3.)

Rhymes submitted a prescription refill request on March 22, 2014, for all five of his medications and on April 28, 2014, he received lisinopril, metformin, and a multivitamin, which he signed for. (ECF No. 67 at Ex. B, pp. 6-9.) On May 20, 2014, Rhymes submitted a medical kite stating that he "did not receive [his] glipizide nor [his] hydrochlorothiazide for the date issue 4/29/14. [He] only receive[d] three (3) medications . . ." (*Id.* at p. 9.) On May 23, 2014, Rhymes once again only received lisinopril, metformin, and a multivitamin. (*Id.* at p. 10.) Finally, on May 29, 2014, Rhymes received and signed for prescription refills for glipizide and hydrochlorothiazide. (*Id.* at p. 11.)

Defendants allege in separate declarations that neither Sablica nor Neven knew of the roughly two (2) month delay in medication. (ECF No. 67 at Exs. C; D.) Defendants claim to have had no knowledge of Rhymes' medication issue and neither were personally involved in Rhymes' medical care. (*Id.*) However, Rhymes alleges in his SAC (ECF No. 26), motion in opposition (ECF No. 80), and declaration (*Id.* at Ex. 2, pp. 2-3), that he personally spoke with both Defendants about the medication issue and that they refused to help. Specifically, he alleges that Sablica was the nurse who delivered medication to the housing unit, Rhymes' made numerous oral complaints to her, and Sablica refused to address Rhymes' complaints. (ECF Nos. 26 at 4-5; 80 at 7; 80 at Ex. 2.) Additionally, he alleges that he spoke to Neven during a visit to the housing unit, informed Neven of the medication issue, was told to submit a kite, and that Neven neither responded to Rhymes' kite nor did Neven remedy the situation. (ECF No. 80 at 7; Ex. 2, p. 3.)

The record demonstrates that there was a delay in Rhymes' medication of approximately two (2) months. However, the Court finds a factual dispute underlying

whether Defendants had actual knowledge of the medication delay and knowingly disregarded a risk of substantial harm to Rhymes. The Court cannot give more weight to one party's declarations and is required to draw all justifiable inferences in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Rhymes has produced sufficient evidence to create a triable issue of material fact on this claim so that a reasonable jury could conclude that Defendants acted with deliberate indifference. *Farmer*, 511 U.S. at 842.

        2.      <u>Harm</u>

Defendants assert that Rhymes was not harmed by the delay in medication. (ECF No. 67 at 6-7.) Meanwhile, Rhymes contends that the delay in medication resulted in advanced neuropathy, intense pain and swelling, and vision loss. (ECF No. 26 at 5.)

Records from the Chronic Care Clinic show that on March 3, 2014, Rhymes condition was classified as "fair" and that on September 22, 2014, his condition was classified as "good." (*Id.* at Exs. A; F.) Although this appears to indicate improvement in Rhymes' condition overall, the records do not pertain to the relevant time period, nor do they explain what factors were taken into consideration when making the assessments, and what specifically was being assessed. (*Id.* at Ex. F.) Additionally, this is countered by Rhymes' declaration wherein he states that from January to December 2014, he did not receive regular medical checks because he was in punitive segregation, and his doctor's post 2014 medical examinations revealed severe neuropathy, pain and swelling in the feet, and loss of vision. (ECF No. 80 at Ex. 2, pp. 1-3.) Finally, the Defendants rely on Rhymes' blood glucose monitoring to demonstrate that his diabetes was regularly monitored and was not affected. (ECF No. 67 at Ex. E.) However, the most recent blood glucose entry is from March 6, 2014, which does not pertain to the time period at issue. (*Id.*)

The Court therefore finds a factual dispute underlying whether the delay in medication caused Rhymes harm. *See Wilhelm v. Rotman*, 680 F.3d 978, 1123 (9th

Cir. 2012) (unnecessary delay in implementing the prescribed treatment sufficient to plead deliberate indifference).

### 3. Personal Participation - Neven

Defendants argue that Neven was not personally involved in any decision placing Rhymes' health or safety at risk. (ECF No. 67 at 7-9.) In opposition, Rhymes claims that Neven knew or should have known about the deprivations of medical care but failed to correct the problem. (ECF No. 26 at 6-8.) Additionally, Rhymes claims that Neven failed to enforce all regulations of the NDOC pertaining to medical care. (*Id.*)

As to the issue of whether Neven knew or should have known of the medical deprivation, the Court has addressed the issue above and found that there is a genuine issue of material fact.

The Court therefore turns to the issue of supervisory liability. To support their claim that Neven is not liable, Defendants submit Neven's declaration, in which he explains that he is a prison warden and not a licensed medical professional; he does not provide care, create medical policy, or prescribe treatment. (ECF No. 67 at Ex. C.) He states that he oversees the daily operations of the institution, correctional staff, and inmates. (*Id.*) All medical issues are overseen by the medical director. (*Id.*) Defendants conclude that Neven is therefore not liable as a supervisor for failing to enforce all regulations of the NDOC pertaining to medical care. (ECF No. 67 at 7-9.)

Rhymes does not specifically address Defendants' argument pertaining to Neven's supervisory liability, nor does Rhymes present any further specific facts to support his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (nonmovant must "go beyond the pleadings . . . and designate specific fact showing" a material factual dispute). Moreover, Rhymes does not dispute any of the factual assertions or evidence that Defendants submit regarding Neven's supervisory liability. Mere conclusory allegations without more are insufficient to withstand summary judgment. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th

Cir. 1984). Therefore, as it pertains to Neven's supervisory liability, the Court recommends that summary judgment be granted.

### 4. Official Capacity Claims

To the extent Rhymes seeks to bring claims for damages against Neven in his official capacity, he may not do so.[1] In his SAC, Rhymes states that he is suing Neven in both his individual and official capacity and that he is seeking declaratory, injunctive and monetary relief. (ECF No. 26 at 2, 12.) The Eleventh Amendment prohibits suits for monetary damages against a State, its agencies, and state officials acting in their official capacities. *Aholelei v. Dep't of Public Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007); *Pena v. Gardner*, 976 F.2d 469, 472 (9th Cir. 1992). As such, the Eleventh Amendment bars any claim for monetary damages against Neven.

### C. Qualified Immunity

Defendants argue that even if there were an Eighth Amendment violation, they are entitled to qualified immunity because the law governing a prison official's conduct regarding medication delays is not clearly established. (ECF No. 67 at 9-11.)

Qualified immunity is an immunity from suit rather than a defense to liability, and "ensures that officers are on notice their conduct is unlawful before being subjected to suit." *Tarabochia v. Adkins*, 766 F.3d 1115, 1121 (9th Cir. 2014). Qualified immunity attaches when an official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 577 U.S., 305, 308, n., 136 S.Ct. 305, 307, n., 193 L.Ed.2d 255 (2015) (*per curiam*). Thus, in deciding whether officers are entitled to qualified immunity, courts consider: "(1) whether 'the facts alleged show the official's conduct violated a constitutional right; and (2) if so, whether the right was clearly established' as of the date of the involved events 'in light of the specific context of the case.'" *Tarabochia*,

---

[1] Although Defendants argue that Rhymes has sued both Neven and Sablica in their official capacity (ECF No. 67 at 9), on page 2 of the SAC (ECF No. 26) Rhymes has only checked "individual" under Sablica's name. Thus, the Court cannot extend Eleventh Amendment protections to Sablica in this instance.

11

766 F.3d at 1121, quoting *Robinson v. York*, 566 F.3d 817, 821 (9th Cir. 2009). Under the second prong, courts "consider whether a reasonable officer would have had fair notice that the action was unlawful." *Id.* at 1125 (quotation marks omitted). While a case directly on point is not required for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2083 (2011). These prongs need not be addressed in any particular order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The general law regarding the medical treatment of prisoners was clearly established at the time the incidents giving rise to this case occurred. *See Toguchi v. Chung,* 391 F.3d 1051, 1060 (9th Cir. 2004); *Clement v. Gomez*, 298 F.3d 989, 906 (9th Cir. 2002). Moreover, the law prohibiting prison officials from intentionally denying or delaying access to medical care was also clearly established. *See Estelle*, 429 U.S. at 104-05; *Snow*, 681 F.3d at 986. It would be clear to a reasonable prison official knowing Rhymes' condition that denial or delay of medical care so as to disregard a serious risk to his health would be unconstitutional. In this case, if the Rhymes' version of the facts were to prevail at trial, a jury may conclude that the prison officials were deliberately indifferent to Rhymes' serious medical needs. Under such circumstances, Defendants actions are not protected by qualified immunity. Thus, summary judgment is inappropriate on this ground.

**IV.   CONCLUSION**

Based upon the foregoing, the Court recommends that Defendants' partial motion for summary judgment be granted in part and denied in part. The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment (ECF No. 67) be **GRANTED IN PART AND, DENIED IN PART**;

**IT IS FURTHER RECOMMENDED** that the deliberate indifference claims against Defendants Neven and Sablica, of the second amended complaint be allowed to **PROCEED**;

**IT IS FURTHER RECOMMENDED** that the supervisory liability claim regarding the enforcement of NDOC regulations against Defendant Neven, of the second amended complaint be **DISMISSED**; and

**IT IS FURTHER RECOMMENDED** that the official capacity claims against Defendants Neven and Sablica, of the second amended complaint be **DISMISSED**;

**IT IS FURTHER RECOMMENDED** that qualified immunity be **DENIED**.

**DATED**: January 28, 2019.

_____
**UNITED STATES MAGISTRATE JUDGE**